This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-40024**

**STATE OF NEW MEXICO,**

 Plaintiff-Appellee,

v.

**ZACHARY B. TROWER,**

 Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Conrad F. Perea, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Emily Bowen, Assistant Attorney General
Albuquerque, NM

for Appellee

Michael E. Cain
Las Cruces, NM

for Appellant

### MEMORANDUM OPINION

**HANISEE, Judge.**

**{1}** Defendant Zachary Trower appeals the district court's orders denying his motion to suppress evidence as well as his subsequent motion to reconsider such denial. Defendant had previously entered a conditional plea agreement in magistrate court, in which he (1) reserved his right to appeal, in district court, the magistrate court's denial of his motion to suppress, and (2) pled no contest to aggravated driving while intoxicated, first offense, contrary to NMSA 1978, Section 66-8-102(C)(1) (2016); failure to maintain a traffic lane, contrary to NMSA 1978, Section 66-7-317(A) (1978); and no proof of

insurance, contrary to NMSA 1978, Section 66-5-205 (2013). Defendant argues on appeal that the district court erred in denying his motions because Defendant did not violate Section 66-7-317(A) and reasonable suspicion did not support initiation of the traffic stop that resulted in Defendant's arrest. The facts of this case are similar to those in *State v. Siqueiros-Valenzuela*, 2017-NMCA-074, ¶ 26, 404 P.3d 782, where we addressed whether a defendant's "isolated, momentary touching the left shoulder line" while passing another vehicle gave rise to reasonable suspicion of a violation of Section 66-7-317(A). While we held in *Siqueiros-Valenzuela* that such an isolated and momentary deviation from the defendant's lane did not constitute a violation of Section 66-7-317(A) and thus did not give rise to reasonable suspicion sufficient to initiate a traffic stop, the instant case presents distinct facts under which we conclude that the law enforcement officer possessed reasonable suspicion of a violation of Section 66-7-317(A) to make a constitutional traffic stop. For these reasons, we affirm.

## BACKGROUND

**{2}**     This case arose from a traffic stop in which New Mexico State Police Department Officer Gustavo Avina pulled over Defendant while Defendant was driving his vehicle on a two-lane, one-way frontage road. As noted in the district court's findings, Officer Avina testified that he observed Defendant drive over the "solid white line" on the right shoulder side of the road, while passing a vehicle on that vehicle's right-hand side. Officer Avina testified further that after Defendant passed the vehicle, "Defendant once again drove over the solid white line and then crossed over the solid white line." The dash camera video recording from Officer Avina's vehicle supports such testimony and findings, showing the tires of Defendant's vehicle crossing onto the solid lane line on the right shoulder side of the road while passing the other vehicle as it travelled in the adjacent left lane. The recording further shows Defendant's vehicle swerving left within the right lane before the vehicle's tires again touched and crossed onto the solid lane line on the right shoulder side of the road. Following his observations of Defendant's driving, Officer Avina initiated a traffic stop, during which Officer Avina noticed a "strong odor of an alcoholic beverage coming from [Defendant's] mouth," and that Defendant had "red[,] bloodshot[, and] watery eyes." Officer Avina arrested Defendant, and the case was filed in magistrate court.

**{3}**     Thereafter, Defendant filed a motion to suppress evidence, arguing that the traffic stop was unconstitutional and not supported by reasonable suspicion. There, as in the present appeal, Defendant argued that Officer Avina did not have reasonable suspicion to initiate the traffic stop because Defendant had not violated a law. Defendant argued that under Section 66-7-317(A) and relevant precedent, he had "safely maintained his lane as nearly as practicable" and therefore had not violated the statute, thus rendering Officer Avina without reasonable suspicion to initiate a traffic stop. Following a hearing, the magistrate court denied Defendant's motion to suppress. Defendant then filed a conditional plea in which he reserved his right to appeal the magistrate court's denial of his motion.

**{4}** Defendant appealed to the district court the magistrate court's order denying his motion to suppress. Defendant again filed a motion to suppress evidence on the same basis as in magistrate court. Following a hearing on the motion—at which the district court heard testimony from Officer Avina and reviewed evidence of the dash camera video from the traffic stop—the district court denied Defendant's motion. The district court found that Officer Avina had reasonable suspicion that Defendant had violated Section 66-7-317(A) prior to the initiation of the traffic stop, and that under such statute—as well as under the applicable totality of the circumstances analysis set forth in *Siqueiros-Valenzuela*, 2017-NMCA-074, ¶¶ 18-19, 21—Defendant did not drive as nearly as practicable within the traffic lane. Defendant filed a motion to reconsider the district court's denial of his motion to suppress, which the district court likewise denied. Defendant appeals.

## DISCUSSION

**{5}** Defendant argues that the district court erred in denying his motion to suppress evidence arising out of the traffic stop as well as his subsequent motion to reconsider such denial, contending that (1) he did not violate Section 66-7-317(A) for failure to maintain a traffic lane, and (2) because he did not violate Section 66-7-317(A), Officer Avina lacked reasonable suspicion to initiate the traffic stop, given that such suspected violation was the basis for Officer Avina's stop of Defendant's vehicle. The State answers to the contrary, arguing that the district court did not err in denying Defendant's motion to suppress because Officer Avina had reasonable suspicion that Defendant had violated Section 66-7-317(A) and was, therefore, justified in initiating the traffic stop of Defendant's vehicle.

**{6}** "In reviewing a district court's suppression ruling, this Court draws all reasonable inferences in favor of the ruling and defers to the district court's findings of fact as long as they are supported by substantial evidence." *Siqueiros-Valenzuela*, 2017-NMCA-074, ¶ 9. "We review de novo the district court's application of the law to those facts." *Id.* (internal quotation marks and citation omitted). Our review of Defendant's appeal requires analysis of Section 66-7-317(A), which provides in pertinent part:

> Whenever any roadway has been divided into two or more clearly marked lanes for traffic the following rules in addition to all others consistent herewith shall apply:
>
> A. a vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.

Our task is to determine whether the district court erred in determining that Officer Avina had reasonable suspicion that Defendant violated Section 66-7-317(A) such that the initiation of a traffic stop was justified.

**{7}** We have previously held that "the plain language of Section 66-7-317(A)—including the 'as nearly as practicable' qualification—recognizes and contemplates circumstances under which a driver may momentarily leave his or her lane of travel without violating the statute." *Siqueiros-Valenzuela*, 2017-NMCA-074, ¶ 18. As we noted in *Siqueiros-Valenzuela*, "[t]he question of what it means to drive a vehicle 'as nearly as practicable' within a single lane is an issue that has not been authoritatively defined by New Mexico appellate courts." *Id.* ¶ 16. We declined in *Siqueiros-Valenzuela* to adopt a bright-line rule for determining whether a driver has maintained their lane "as nearly as practicable," and instead adopted a totality of the circumstances analysis to make such determination. *Id.* ¶¶ 18-19, 21. Under such totality of the circumstances analysis, we incorporated "fact-specific inquir[ies]," such as whether the defendant's vehicle was actively passing another vehicle, the speed with which the vehicles were traveling, and "whether there were any weather conditions, road features, or other circumstances that could have affected or interfered with a driver's ability to keep his or her vehicle in a single lane." *Id.* ¶ 19.

**{8}** In *Siqueiros-Valenzuela*, the defendant was driving in the right lane on eastbound Interstate 40 and attempted to pass two semi-trucks by changing lanes into the left lane. *Id.* ¶ 2. While passing the semi-trucks, the left tires of the defendant's vehicle "touched the yellow shoulder line of the left passing lane." *Id.* After passing the semi-trucks, the defendant changed lanes again and returned to the right lane of the interstate. *Id.* Although the officer in *Siqueiros-Valenzuela* "did not observe any other driving violations, erratic driving, or weaving of the [defendant's] vehicle within its own lane," the officer initiated a traffic stop of the defendant's vehicle that culminated in a search of the defendant's vehicle. *Id.* ¶¶ 2-3 (internal quotation marks omitted). The search of the defendant's vehicle "resulted in the discovery of four bundles of methamphetamine, leading to felony charges against [the d]efendant for trafficking of controlled substances (methamphetamine) (possession with intent to distribute) and conspiracy to commit trafficking of methamphetamine." *Id.* ¶ 3.

**{9}** As in the instant case, the defendant in *Siqueiros-Valenzuela* moved to suppress the evidence procured during the traffic stop on the basis that the stop was unconstitutional and that the officer did not have reasonable suspicion under Section 66-7-317(A) to initiate the stop. *Siqueiros-Valenzuela*, 2017-NMCA-074, ¶ 4. Following a hearing on the defendant's motion to suppress, the district court found "that the one, brief touching of the left yellow shoulder line, where [the d]efendant was in the process of passing two semi-trucks on the interstate, did not provide [the officer] with justification to conduct a traffic stop." *Id.* ¶ 6. "Specifically, the district court indicated that Section 66-7-317(A)'s requirement that a driver maintain a single lane 'as nearly as practicable' appears 'to allow some slack' and that it is reasonable—and safe—for a driver to move as far to the left as possible when passing a semi-truck at seventy-five miles per hour." *Siqueiros-Valenzuela*, 2017-NMCA-074, ¶ 6. The district court granted the defendant's motion to suppress and the State appealed to this Court. *Id.*

**{10}** On appeal, we addressed "the question of whether the district court's determination that [the officer] did not have reasonable suspicion to stop [the d]efendant

for a violation of Section 66-7-317(A) was error." *Siqueiros-Valenzuela*, 2017-NMCA-074, ¶ 8. There, we held that under the totality of the circumstances—the analysis we determined was appropriate for determining whether a defendant complied with Section 66-7-317(A)'s requirement to maintain their lane "as nearly as practicable"—the defendant's "isolated, momentary touching [of] the left shoulder line did not give rise to a reasonable suspicion of a violation of Section 66-7-317(A)." *Siqueiros-Valenzuela*, 2017-NMCA-074, ¶¶ 18-19, 21, 26. We further explained that because the traffic stop "was not predicated on reasonable suspicion, the traffic stop was invalid," and affirmed the district court. *Id.* ¶¶ 26, 28.

**{11}** Following our review of the record, we consider the facts in the instant case to be distinct from those in *Siqueiros-Valenzuela*. First, in *Siqueiros-Valenzuela*, the defendant's vehicle only touched and crossed over onto the left lane line once while actively passing the two semi-trucks. *Id.* ¶¶ 2, 22. Here, by contrast, Defendant's vehicle touched and crossed over onto the right shoulder-side lane line twice—once while passing the truck and trailer and again after. Second, unlike in *Siqueiros-Valenzuela* where the officer testified that he "did not observe any other driving violations, erratic driving, or weaving of the [defendant's] vehicle within its own lane," *id.* ¶¶ 2-3 (internal quotation marks omitted), here the dash camera recording shows that Defendant swerved left prior to touching—for the second time—the solid lane line on the right shoulder side of the road. While Defendant's tires do not cross over onto the middle lane line during the swerve to the left, the swerve could reasonably constitute the type of "erratic driving" or "weaving" that—while missing from *Siqueiros-Valenzuela*—could support reasonable suspicion of a statutory violation, especially when considered together with the two different occasions on which Defendant crossed onto the lane line. *See id.* Third, we note that the totality of the circumstances analysis in *Siqueiros-Valenzuela* included a discussion of the fact that the defendant's deviation from their lane occurred while "passing a semi-truck at seventy-five miles per hour." *Id.* ¶ 6. Here, only one of the two deviations from Defendant's lane occurred while he was passing a vehicle—and at a presumably lower speed than seventy-five miles per hour, given that the road in this case is a frontage road and not an interstate as in *Siqueiros-Valenzuela*.

**{12}** Further, there do not appear to be any weather conditions or road features "that could have affected or interfered with [Defendant's] ability to keep his . . . vehicle in a single lane." *See id.* ¶ 19. In his briefing, Defendant refers to the curved and downhill nature of the segment of the roadway at issue, but does not argue such conditions affected or interfered with Defendant's ability to maintain his lane. Indeed, we do not discern from the record before us any other relevant conditions that could aid in justifying Defendant's deviations from his lane. Applying the *Siqueiros-Valenzuela* totality of the circumstances test, we conclude that Officer Avina's observations of such deviations, together with Defendant's swerve within his lane, provided reasonable suspicion to support the initiation of a traffic stop and hold there to be no error by the district court in affirming the magistrate court on such basis.

**CONCLUSION**

**{13}** For the foregoing reasons, we affirm.

**{14}  IT IS SO ORDERED.**

**J. MILES HANISEE, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**ZACHARY A. IVES, Judge**